UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MICHAEL HYATT | ) | CIVIL ACTION NO.: 2:22-cv-04004 |
| | ) | |
| VERSUS | ) | JUDGE ELDON E. FALLON |
| | ) | |
| ABR LOGISTICS, LLC., THOMAS JOHNSON, | ) | MAGISTRATE KAREN W. ROBY |
| AND QBE UK LIMITED | ) | |

**ORDER AND REASONS**

The Court has before it cross motions for summary judgment by Defendant and Third-Party Plaintiff ABR Logistics, LLC, Thomas Johnson, and QBE UK Limited and by Third-Party Defendant Alabama Shipyard, LLC. After reviewing the parties' briefings and the applicable law, the Court now rules as follows.

**I.     BACKGROUND**

This case arises out of an alleged personal injury to Plaintiff Michael Hyatt ("Hyatt") by Defendants ABR Logistics, Thomas Johnson, and QBE UK Limited (collectively "ABR Logistics"). Complaint, R. Doc. 1 at 2. Hyatt was an employee of Alabama Shipyard, LLC ("ASY") and alleges that he was injured on October 20, 2021, as he was taken from Port Fourchon to the rig HERCULES 202, a cold stacked jack-up rig which ASY had recently purchased as scrap.[1] Third-Party Complaint, R. Doc. 10 at 3; Memo for Summary Judgment, R. Doc. 29-1 at 4. The HERCULES 202 was located approximately seven miles offshore. R. Doc. 1 at 2.

On or about October 5, 2021, ASY entered into a Master Time Charter Agreement ("MTCA") with ABR Logistics, which owned and operated the M/V MISS WYNTER, an offshore

---

[1]. ASY is a ship repair and ship breaking and scrapping business with its facility located in Alabama on the Mobile River. R. Doc. 29-1 at 4.

1

supply vessel captained by Thomas Johnson. R. Doc. 10 at 2; R. Doc. 1 at 3. Pursuant to the MTCA, Hyatt and other ASY employees were aboard the MISS WYNTER in transit from Port Fourchon to the decommissioned rig in order to "dead tow" the rig back to ASY for dismantling. R. Doc. 29-1 at 1-2. Hyatt was a crane operator whose task was to board the rig by ladder from the MISS WYNTER and then use the crane to bring the rest of the ASY employees aboard the rig. *Id.* ABR Logistics describes this ladder as the "lone remaining ladder on the [rig]" and the "sole means of ingress to board the" HERCULES 202, and that Hyatt was the only employee who was required to access the rig by ladder because he would bring the rest of the ASY employees over via crane. R. Doc. 10 at 3. While Hyatt attempted to transfer to the ladder, the MISS WYNTER crashed into the ladder and crushed his right hand, causing him to sustain "the severing of several arteries and tendons and partial amputation of his fingers." R. Doc. 1 at 2.

Hyatt brought suit against ABR Logistics asserting negligence through respondeat superior as to negligent hiring, training, and supervision of Captain Johnson and asserting that he was not warned by ABR Logistics as to impending ship maneuvers and that ABR Logistics failed to control the vessel, thereby creating a dangerous situation resulting in his injuries. *Id.* at 2-4.

ABR Logistics soon after filed a Third-Party Complaint against ASY as Hyatt's employer, arguing (1) that the MTCA allocates risk and indemnities between ABR Logistics and ASY such that ASY is obligated to hold ABR Logistics harmless for claims asserted by ASY employees, and (2) that the MTCA required ASY to provide additional insurance coverage to ABR Logistics. R. Doc. 10 at 5-6. ABR Logistics alleges that after tendering their defense and requesting the additional insurance coverage, ASY's insurer declined coverage, specifically citing "that the watercraft exclusion of its general liability policy was not deleted nor was it requested to be deleted." *Id.* at 6. ABR Logistics asserts that this failure to indemnify and this failure to obtain

additional insurance coverage naming ABR Logistics as an insured pursuant to the MTCA constitutes a breach of the MTCA. *Id.* at 6-7.

## II.     PRESENT MOTIONS

ABR Logistics and ASY have filed cross motions for summary judgment asking the Court to rule as a matter of law on the meaning of the various disputed provisions in the MTCA. ASY argues in its motion that (1) the Longshore & Harbor Workers' Compensation Act ("LHWCA") voids the contractual indemnity provided by the MTCA, and (2) insurance coverage from ASY is excluded under the MTCA. R. Doc. 29-1 at 2-3.[2] As to contractual indemnity, ASY acknowledges that Articles 14 and 15 of the MTCA purport to provide for reciprocal indemnity for personal injury claims, but argues that 33 U.S.C. § 905(b) voids such provisions. *Id.* at 7-8. ASY relies on the following statutory language:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, *and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void*.

33 U.S.C. § 905(b) (emphasis added). As to the insurance requirement, ASY notes that ABR Logistics is not prevented "from seeking insurance coverage from a longshore employer as an additional insured where the parties have clearly reached an agreement." R. Doc. 29-1 at 8. However, ASY argues that ABR Logistics misreads the language in the MTCA and that Article 12 of the MTCA "expressly and explicitly excludes ASY from obtaining insurance to benefit ABR Logistics." *Id.* at 9. To support this position, ASY points to the sentence in Article 12, which reads:

---

[2]. The motion presents an additional claim arguing that the LHWCA also excludes tort indemnity, but in a telephone status conference on November 7, 2023, counsel represented to the Court that the tort issue can be disregarded in adjudicating these cross motions. *See* Minute Entry, R. Doc. 31. Therefore, this Order will not address the tort indemnity question but reserves its right to rule on it at a later date if the parties so move.

"It is understood and agreed that CLIENT's [ASY's] liability insurance shall exclude coverage for those risks assumed or insured by COMPANY [ABR Logistics] in this MASTER AGREEMENT." *Id.* (quoting the MTCA, R. Doc. 29-3 at 26). ASY also points to Exhibit B of the MTCA, arguing that it is in fact *ABR Logistics* who is required to obtain additional insurance naming *ASY* as a named insured. *Id.* at 9.

On the other hand, ABR Logistics argues that the terms of the MTCA clearly provide for a "knock-for-knock indemnity agreement as is common in the maritime industry." Memo for Summary Judgment, R. Doc. 30-1 at 4. ABR Logistics claims that, as to the contractual indemnity issue, ASY selects one sentence from Article 12 as the basis for its position but that the MTCA, when read in whole, requires an opposite conclusion. *Id.* at 5. Relying on Articles 12, 13, 14, and 15, ABR Logistics asserts that the MTCA requires that each party to the MTCA indemnify the other as to personal injury claims by its own employees, that is, that ABR Logistics is to indemnify ASY for any injuries sustained to ABR Logistics employees, and that ASY is to indemnify ABR Logistics for any injuries sustained to ASY employees, like Hyatt. *Id.* ABR Logistics emphasizes the language in Articles 14 and 15, the reciprocal indemnity provisions, that states such indemnity is agreed even if the injury was as a result of the other party's negligence or fault. *Id.* In essence, ABR Logistics reads the MTCA to say that even if Hyatt were injured because of ABR Logistics's negligence or fault, ASY is to indemnify them because Hyatt is an ASY employee. *See id.*

As to the insurance coverage issue, ABR Logistics first notes that the MTCA requires ASY to obtain comprehensive general liability ("CGL") insurance that names ABR Logistics and its vessels as additional insured. *Id.* at 2. Article 13 of the MTCA further states that if ASY "vitiate[s] or invalidate[s] any of the aforesaid policies of insurance," then it is required to pay ABR Logistics's losses, damages, and expenses against claims that would have otherwise been covered

by such insurance, essentially acting as a self-insurer. *Id.* (quoting the MTCA Art. 13, R. Doc. 29-3 at 26). Additionally, Article 12 requires ASY's CGL policy to "include[e] Contractual Liability Insurance, covering CLIENT's obligations under this MASTER AGREEMENT." *See* Opposition Memo, R. Doc. 33 at 3 (quoting the MTCA). ABR Logistics also asserts that ASY's failure to ensure the watercraft exclusion is deleted from its CGL policy constitutes such a vitiation, as that was the reason the insurer refused to provide coverage upon ABR Logistics's request. R. Doc. 30-1 at 2-3.

Both parties filed brief opposition memos which reiterate their arguments presented in their motions. *See* R. Docs. 32, 33. In sum, the dispute boils down to two legal questions: (1) does the LHWCA render the indemnification provisions in the MTCA void, and (2) do the terms of the MTCA require ASY to indemnify ABR Logistics, either through its insurance or as a self-insurer?

### III.  APPLICABLE LAW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

### A. LHWCA

In 1972, the LHWCA was amended to remove unseaworthiness as a potential remedy for an employee covered by the Act. In its place, the amended Act allowed a claim for vessel negligence but prohibited any indemnity claims against the employer by the vessel owner. Section 905(b) of the amended Act provides that in the event of a personal injury caused by vessel negligence, that injured person "may bring an action against such vessel as a third party . . . and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void." 33 U.S.C. § 905(b). Courts will look to both the statutory language and the contract language when determining whether an agreement is voided. For example, in *Holden v. U.S. United Ocean Services, L.L.C.*, the Fifth Circuit found (and the parties agreed) that § 905(b) voided an agreement to indemnify. 582 F. App'x 271, 273 (5th Cir. 2014). The *Holden* court was interpreting a contract between Bucks Kreihs, a ship repairer, and United Ocean Services, to whom Bucks Kreihs agreed to provide repair services. *Id.* at 272. The contract included an indemnity agreement as well as a requirement that Bucks Kreihs procure insurance and name United as an additional insured. *Id.* In that case, a Bucks Kreihs employee was injured aboard a barge owned and operated by United and sued United, which then made a demand for indemnity and coverage upon Bucks Kreihs's insurer. *Id.* After determining that the LHWCA voided the indemnity agreement, the court noted that the "general insuring clause of the policy extends coverage only to those obligations that the insured 'shall become legally obligated to pay.'" *Id.* at 272-73. The court found that the language providing coverage to only obligations that Bucks Kreihs would be "legally obligated to pay" implicated § 905(b), and because United cannot seek such indemnity from Bucks Kreihs directly under § 905(b), its insurer could "assert Buck Kreihs's defense to liability to United in this scenario." *Id.* at 273.

The LHWCA applies to ship repairers, shipbuilders, and shipbreakers. 33 U.S.C. §§ 902(3) *see also* § 905(b) ("If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer."). Courts have interpreted the language in § 905(b) within the specific context of the 1984 amendments to the section. *White v. American Commercial Marine Service Co., Inc.*, 877 F. Supp. 318, 321 (E.D. La. 1995) ("The 1984 amendments to § 905(b) removed the exception under which ship repairers could sue their employers as vessel owners, *i.e.*, when the injury was caused by persons other than those engaged in shipbuilding or repair services.").

### B. Insurance Contract Interpretation

Louisiana law applies the general rules of contract interpretation to construe insurance policies. *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 269 (5th Cir. 1990). "The parties' intent, as reflected by the words of the policy, determine the extent of coverage." *Reynolds v. Select Properties, Ltd.*, 634 So.2d 1180, 1183 (La. 1994). "Words and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Id.* Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written. *Ledbetter v. Concord Gen. Corp.*, 665 So.2d 1166, 1169 (La. 1996).

Courts interpreting Louisiana law require "that each provision in a contract be interpreted in the light of other provisions so that each is given the meaning suggested by the contract as a

7

whole." *Southwestern Engineering Co. v. Cajun Elec. Power Co-op, Inc.*, 915 F.2d 972, 980 (5th Cir. 1990). This Court has held that, under federal maritime law, contracts of indemnity

> should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage.

*Cargill Fertilizer, Inc. v. PEARL JAHN O/B*, 190 F. Supp. 2d 894, 899-900 (E.D. La. 2002) (citing *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981)). Furthermore, "[i]ndemnity and insurance procurement provisions of a contract must be construed harmoniously to effect the meaning intended by the contract as a whole." *In re Diamond Services*, No. 00-156, 2001 WL 531091, at *2 (E.D. La. May 16, 2001) (citing *Tullier v. Halliburton Geophysical Services, Inc.*, 81 F.3d 552, 554 (5th Cir. 1996)). "A charter party is a classic example of a maritime contract" and courts construe their terms according to maritime law. *Fontenot v. Mesa Petrol. Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986).

### C. Knock-for-Knock Indemnity & Insurance Procurement Provisions

Reciprocal indemnity provisions, sometimes called "knock-for-knock" provisions, are relatively common in maritime contracts. *See* 1 Admiralty & Mar. Law § 5:16 (6th ed.) (2023); William E. O'Neil, *Insuring Contractual Indemnity Agreements Under CGL, MGL, and P & I Policies*, 21 Tul. Mar. L.J. 359, 375-76 (1997). Such provisions establish an "indemnity agreement whereby each party would indemnify the other for claims brought by its employees or subcontractor's employees." *Comeaux v. Coil Tubing Services*, 02-1790, 2004 WL 2984298, at *3 (E.D. La. Dec. 3, 2004) (citing *Weathersby v. Conoco Oil Company*, 752 F.2d 953, 955-57 (5th Cir. 1984)). Courts often uphold knock-for-knock indemnity provisions in certain maritime

contracts. *See Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 540 (5th Cir. 1986);[3] *Fontenot*, 791 F.2d at 1216.[4] However, an agreement between the parties cannot contravene federal law.

The LHWCA, along with other statutory frameworks, governs certain maritime disputes and the applicability of contractual indemnity provisions. *See, e.g.*, *Voison v. O.D.E.C.O. Drilling Co.*, 744 F.3d 1174, 1177 (5th Cir. 1984) (discussing the LHWCA and that the court below correctly found § 905(b) invalidated the indemnity provision).

While the LHWCA voids contractual indemnity, courts have found that provisions requiring the procurement of insurance and the naming of the additional assureds are not barred by § 905(b). *See Voison*, 744 F.3d at 1176-79 (discussing the legislative history of § 905(b) and concluding that "a valid additional assured clause is not prohibited under section 905(b)"); *Price v. Zim Israel Navigation Co., Ltd.*, 616 F.2d 422, 428-29 (9th Cir. 1980) (discussing how § 905(b)'s purpose was to prevent *Ryan* triangle suits and that insurance procurement provisions do not amount to indirect liability but instead "merely [] allocate initially the burden of procuring insurance").

The Fifth Circuit, in *In re Elevating Boats LLC*, affirmed a district court's determination that the requirement to name another party as an additional insured on its policy "constituted an independent obligation, separate and apart form the parties' indemnity agreement" and held that party in breach of the agreement and liable for damages. 286 F. App'x 118, 121 (5th Cir. 2008). In that case, Elevating Boats was required under their charter agreement to name Devon, its charterer, as an additional insured on its protection and indemnity ("P & I") policy. *Id.* at 120.

---

[3]. It is important to recognize that in *Theriot* however the injured plaintiff was found to not be entitled to seaman status and the court rejected his argument about contributory negligence, and therefore the court did not grapple with the knock-for-knock indemnity's validity in the context of the LHWCA. *Theriot*, 783 F.2d at 532-36.

[4]. In *Fontenot*, the court considered the mutual indemnity provisions to be "precisely the type envisioned in and sanctioned by the 1984 amendments to the [LHWCA], citing § 905(c), which preserves mutual indemnity in situations governed by the 43 U.S.C. § 1333, the Outer Continental Shelf Lands Act. *Fontenot*, 791 F.2d at 1213 n.3.

Elevating Boats failed to do so, and Devon had to pay its own insurance deductible in order to cover its defense and settlement of the underlying personal injury claim. *Id.* Devon then sought damages to cover those costs under a breach of contract theory. *Id.* The district court rejected Elevating Boats argument that the indemnity provisions, which included language about apportionment of fault, would be rendered meaningless if it was required to name Devon as an additional insured. *Id.* at 122-23. They argued that the insurance requirement was limited by the indemnity provision and only because relevant if indemnity was applicable. *Id.* The district court rejected that reading and the Fifth Circuit affirmed, agreeing that the breach of the obligation to list Devon as an additional insured "was not based on any reapportionment of the fault between the parties" and therefore the "court's award did not conflict with the parties' indemnity agreement." *Id.* at 123.

## IV.　DISCUSSION

After a review of the foregoing case law, the Court finds that the knock-for-knock indemnity provisions contained in the MTCA are rendered void by § 905(b). It is undisputed that the jack-up rig and the MISS WYNTER are vessels and therefore the LHWCA applies. Absent the § 905(c) exception which permits reciprocal indemnity agreements when the Outer Continental Shelf Lands Act is at play, which it is not in this case, the Court cannot escape the conclusion that such indemnification for vessel negligence is barred. Knock-for-knock indemnification may be commonplace in maritime contracts more broadly, but a review of the case law demonstrates that the courts upholding such provisions do so in instances where § 905(b) is inapplicable. *See, e.g.*, *Fontenot*, 791 F.2d at 1216; *Theriot*, 783 F.2d at 540; *see also Becker*, 586 F.3d at 366 (distinguishing between § 905(c), which permits reciprocal indemnity provisions, and § 905(b), which does not).

Next, a maritime contract provision obligating a party to procure insurance and name the other party as an additional insured is not voided by the LHWCA, as it is not considered a form of direct or indirect liability. *Voison*, 744 F.3d at 1176-79; *Price*, 616 F.2d at 428-29. Article 12 of the MTCA obligates ASY to obtain insurance, including a CGL policy with contractual liability insurance and an All Risks Cargo and Equipment Insurance policy, covering its obligations under the MTCA. Article 12 states that both policies "shall name COMPANY, the vessel, its owner(s), operators, master and crew and their respective underwriters as Additional Assureds and shall waive subrogation against such additional assureds." R. Doc. 29-3 at 26. There is no requirement in Article 12 that ASY's insured obligations hinge upon the applicability of indemnity. The Court therefore finds that, like in *In re Elevating Boats*, any potential breach of the insurance procurement provision is separate and independent from the applicability of indemnity.

Further, there is no requirement in Article 12 or otherwise that ASY delete the watercraft exclusion or cause it to be deleted, however Exhibit B – Company's Insurance does contain such an obligation as to ABR Logistics's policy. *See* R. Doc, 29-3 at 32 ("COMPREHENSIVE GENERAL LIABILITY INSURANCE – which shall include products liability, completed operations, and broad form contractual liability coverage, which shall include all contractual liabilities and indemnities assumed herein by COMPANY, and *shall have the watercraft exclusion deleted* so as to cover all vessels not insured under a protection and indemnity policy; . . . ") (emphasis added). That ASY did not request the watercraft exclusion be removed from *its* CGL policy does not constitute a breach of an obligation contained in the MTCA because no such obligation was incurred by ASY.

11

Ultimately, in this case, ABR Logistics connects its insurance argument to its indemnity arguments. ABR Logistics does not allege that ASY breached the MTCA by failing to obtain insurance but instead argues that its failure to have the watercraft exclusion deleted and/or failure to name ABR Logistics as an additional insured vitiates ASY's policy such that the policy would not, and in fact did not, insure an alleged obligation to indemnify ABR Logistics. Because the Court finds that the LHWCA voids these indemnity provisions, the insurance argument is irrelevant. Like in *Holden*, because ASY has no obligation to indemnify ABR Logistics for vessel negligence, it similarly has no obligation to obtain insurance which would cover such indemnification. *See* 582 F. App'x at 273.

For the foregoing reasons, ASY's Motion for Summary Judgment., R. Doc. 29, is hereby **GRANTED** and ABR Logistics's Motion for Summary Judgment, R. Doc. 30, is hereby **DENIED**.

New Orleans, Louisiana, this 22nd day of November, 2023.

                                                                       *[signature: Eldon E. Fallon]*
                                                                        United States District Judge